UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HERBERT S. MONCIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-630-TAV-HBG |
| | ) | |
| BILL HASLAM, Governor of the State of | ) | |
| Tennessee, and MARK GOINS, Tennessee | ) | |
| Coordinator of Elections, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This civil action is before the Court on several motions, including plaintiff's Motion for Temporary Injunction [Doc. 6], plaintiff's motion to amend the complaint filed on December 27, 2013 [Doc. 10], Plaintiff's Motion to Strike and Withdraw the December 27, 2013 Motion to Amend the Complaint and File in its Place this Motion to Amend with Amended Complaint Attached [Doc. 20], plaintiff's Motion for Scheduling Conference [Doc. 24], plaintiff's Motion for Leave to File the Attached Amended Application for Temporary Injunction in Excess of Twenty-Five Pages [Doc. 25], plaintiff's Motion for Temporary, Limited EDTN CM-ECF Access [Doc. 30], plaintiff's Application for Temporary Injunction Prohibiting Governor Haslam From Making Appointments to New Terms of Office for Tennessee Appellate Judges [Doc. 32], and plaintiff's Motion for Summary Judgment [Doc. 33]. Defendants have filed responses to

some of these motions [Docs. 13, 14, 26, 35]. The Court held a hearing on Thursday, January 30, 2014 [Doc. 28].[1]

The Court has thoroughly considered all of the filings in this action filed up to and including February 26, 2014,[2] as well as the arguments advanced orally by the parties. Upon review of the filings and arguments of the parties, the Court finds plaintiff lacks standing. Hence, the Court will deny all of the pending motions and dismiss this action.

**I.     Background[3]**

This action concerns what is commonly referred to as the "Tennessee Plan." The Tennessee Plan is the method by which state appellate judges are evaluated and selected for office. *See* Tenn. Code Ann. §§ 17-4-101, et seq.; *see also* State of Tennessee Executive Order No. 34 (Oct. 16, 2013). The part of the plan most relevant to this litigation is that if a "vacancy" occurs in an office of an appellate court judgeship after July 1, 2009, by death, resignation, or otherwise, the governor shall fill the vacancy by

---

[1] This hearing occurred prior to the filing of some of plaintiff's motions, and the Court has endeavored to consider all of plaintiff's filings, in addition to the arguments presented on January 30, 2014, in issuing this memorandum opinion and corresponding order in prompt fashion. *See* Fed. R. Civ. P. 1 (mandating "the just, speedy, and inexpensive determination of every action and proceeding").

[2] In light of the Court's order on January 22, 2014 [Doc. 22], the Court has not considered plaintiff's Amended Application for Temporary Injunction [Doc. 21].

[3] The Court declines to discuss every point raised by the parties in the many filings before the Court given Rule 1's mandate. Instead, the Court discusses primarily those issues and arguments related to the threshold issue of standing. Nonetheless, the Court has reviewed and considered the entire record in reaching the determination that plaintiff lacks standing.

appointing one of the three persons nominated by the Judicial Nominating Commission ("JNC"). *See* Tenn. Code Ann. § 17-4-112.

On May 24, 2013, Judge Joseph M. Tipton, a judge on the Tennessee Court of Criminal Appeals, notified Governor Bill Haslam that he would not seek retention for another term in the August 2014 election [Doc. 1 ¶¶ 5–6]. The JNC ultimately submitted nominees to fill the position, and Governor Haslam appointed Robert H. Montgomery, Jr. [*See id.* ¶ 20; Doc. 14].

Plaintiff, Herbert S. Moncier ("Moncier"), has an interest in filling Judge Tipton's position [*Id.* ¶ 1]. While he did not submit his name to the JNC for consideration, plaintiff requested that Coordinator of Elections Mark Goins allow his name to be placed on the August 2014 ballot as a candidate for the office. Goins denied him access, referring plaintiff to the "Tennessee statutes that provide for the manner judges are appointed and stand for election in Tennessee" [*Id.* ¶¶ 11–12].

On October 18, 2013, plaintiff filed this action, pro se [Doc. 1]. He seeks declaratory and injunctive relief on behalf of "himself, and for the people of the State of Tennessee," against defendants Bill Haslam, Governor of the State of Tennessee, and Coordinator of Elections Mark Goins. He asserts that this Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 1331 and 42 U.S.C. §§ 1983 and 1988 [*Id.* ¶ 4]. According to plaintiff, in implementing the Tennessee Plan, defendants are violating the First and Fourteenth Amendments of the United States Constitution because they are denying access to the August 2014 ballot and the right to political association.

3

This matter came before the Court as a result of plaintiff filing a motion for injunctive relief [Doc. 6]. In his motion for injunctive relief, plaintiff asks the Court to direct Goins to provide plaintiff a nominating petition to be on the ballot for the August 2014 general election for the office of judge of the Tennessee Criminal Court of Appeals for the Eastern Section; to perform his duties as Tennessee's Coordinator of Elections to provide plaintiff and the Knox County Election Commission instructions as to the requirements for plaintiff to qualify to be on the August ballot; and to provide such information for each office of the Tennessee Supreme Court, Tennessee Court of Appeals, and Tennessee Criminal Court of Appeals.

Along with his motion for injunctive relief, and during the course of this litigation, plaintiff has filed multiple motions to amend his complaint.[4] In one motion to amend, plaintiff seeks to add the "State of Tennessee" as a party plaintiff, pursuant to the state's statutory *quo warranto* procedure. *See* Tenn. Code Ann. § 29-35-101. He also seeks to add as defendants members of the Judicial Performance Evaluation Commission ("JPEC")—which plaintiff asserts evaluates state appellate judges and votes as to retention. He does not seek to add any additional federal claims, but he does seek to add new claims for alleged violations of the Tennessee Constitution, and he asks the Court to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367. These claims include the assertion that the provisions of Tenn. Code Ann. §§ 17-4-101, et seq., governing the nomination and retention election of appellate judges, the provisions of

---

[4] Plaintiff moved to substitute his initial motion to amend the complaint, which the Court granted [*See* Doc. 8].

4

Tenn. Code Ann. § 17-4-201 and Tenn. Sup. Ct. R. 27 establishing the JPEC, and the Governor's Executive Order 34 governing judicial appointments to fill vacancies on the appellate courts, violate multiple provisions of the Tennessee Constitution, including Art. I, §§ 1, 5, 8, 19 and 23, Art. IV, §§ 1 and 4, Art. VI, §§ 3, 4 and 11, and Art. VII, § 5. He also seeks to amend the injunctive relief sought.

In a later motion to amend, plaintiff asserts he seeks to amend the complaint to include factual allegations about events occurring after he filed his last-filed motion to amend [Doc. 20]. He also argues he has "proffered a more particularized statement"—particularly nineteen statements [*See* Doc. 20-1 ¶ 2(1)–(19)]—of his standing and he seeks to include more specific statements with respect to his alleged violations of constitutional rights. He further requests to amend the declaratory and injunctive relief sought.

Plaintiff filed two motions with respect to his request for injunctive relief as well. First, plaintiff filed a motion for leave to file an amended application for injunctive relief that exceeds twenty-five pages, asserting he needs additional pages to discuss recent events, including a state ruling that the JPEC is unconstitutionally empanelled and the defendants' successful attempt in avoiding a ruling on plaintiff's summary judgment motion in his state-court action.[5] Second, plaintiff filed a motion asking the Court to enjoin Governor Haslam from making an appointment to the office of Supreme Court

---

[5] After commencing this action, plaintiff filed a parallel lawsuit in state court [*See* Doc. 14-1]. Shortly after defendants asserted that this Court should abstain from the issues raised in this case because of that state-court action, plaintiff non-suited the litigation [Doc. 29].

5

Justice William Koch, Jr., and from making any further appointments to a new term of any office of a Tennessee appellate judge for terms beginning September 1, 2014 [Doc. 32].

## II.  Analysis

Standing is a threshold question in every federal case, and standing consists of two components: Article III standing and prudential standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). Article III standing "enforces the Constitution's case-or-controversy requirement" while prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (internal quotation marks and citations omitted). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002) (citation omitted).

To establish Article III standing, a plaintiff must demonstrate:

> (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Wuliger*, 567 F.3d at 793 (quoting *Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004)). An "injury in fact" must consist of "an invasion of a legally-protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish prudential standing:

6

Case 3:13-cv-00630-TAV-HBG   Document 40   Filed 02/28/14   Page 6 of 18   PageID #: 846

> (1) a plaintiff must assert his own legal rights and interests, without resting the claim on the rights or interests of third parties; (2) the claim must not be a 'generalized grievance' shared by a large class of citizens; and (3) in statutory cases, the plaintiff's claim must fall within the 'zone of interests' regulated by the statute in question.

*Wuliger*, 567 F.3d at 793 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

The standing inquiry focuses not on the merits of the claim, but on the party bringing the claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church and States, Inc.*, 454 U.S. 464, 484 (1982). Yet, "the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." *Allen v. Wright*, 468 U.S. 737, 752 (1984); *see id.* (indicating certain questions arise in this inquiry, including: "Is the injury too abstract, or otherwise not appropriate, to be considered judicially cognizable? Is the line of causation between the illegal conduct and injury too attenuated? Is the prospect of obtaining relief from the injury as a result of a favorable ruling too speculative?").

Defendants assert that plaintiff lacks the requisite standing to challenge the constitutionality of the Tennessee Plan [Doc. 14]. Defendants state plaintiff has not alleged in his complaint that he has suffered any particularized injury as a result of any defendant, and instead, asserts that he and the people of Tennessee have been or will be deprived of their First and Fourteenth Amendment rights to vote for appellate judges.

Thus, they claim, the claimed injury is not particularized and distinct but abstract and common to all. The Court agrees.

"The Supreme Court has long held that a plaintiff does not have standing 'to challenge laws of general application where their own injury is not distinct from that suffered in general by other . . . citizens." *Johnson v. Bredesen*, 356 F. App'x 781, 784 (6th Cir. 2009) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). "This is because the judicial power of the United States defined by Art. III is not an unconditional authority to determine the constitutionality of legislative or executive acts." *Id.* (alteration, internal quotation marks, and citation omitted). Thus, when a plaintiff asserts that the law has not been followed, the plaintiff's "injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that [the Supreme Court] ha[s] refused to countenance in the past." *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam). *Cf. Baker v. Carr*, 369 U.S. 186, 207–08 (1962) (finding voters had standing to challenge state apportionment statute under Equal Protection clause).

In *Johnson v. Bredesen*, the plaintiffs filed a § 1983 suit, arguing they were prohibited by the Tennessee Plan from voting in a popular election for candidates to fill the seats of two Tennessee Supreme Court Justices in violation of the Fourteenth Amendment of the United States Constitution and Article VI, section 3 of the Tennessee Constitution. 356 F. App'x at 781–82. The Sixth Circuit upheld the district court's determination that they lacked standing because they merely argued that the law was not

8

being followed and thus did not assert a particularized stake in the litigation. *Id.* at 784.[6]

Other cases addressing a challenge to Tennessee's election methodology have reached similar conclusions. For example, in *Hooker v. Anderson*, the plaintiff, John Jay Hooker, asserted the Tennessee Retention Election Law, "by which Tennessee appellate judges are elected, is unconstitutional because it deprives the PEOPLE of Tennessee of a Constitutionally elected Appellate Court system in violation of the XIV Amendment." 12 F. App'x 323, 324 (6th Cir. 2001) (internal quotation marks omitted). He "also claimed that by virtue of the operation of the retention election law, he was deprived of the opportunity to run for election against an incumbent appellate judge in a contested election." *Id.* He further alleged that the law (1) deprived him of his right to due process and equal protection of the law because there was no choice of candidates, (2) violated his First Amendment right to participate in the election process, and (3) violated his Fourteenth Amendment right to be a candidate for a state appellate judgeship. *Id.* The

---

[6] One of the plaintiffs, John Jay Hooker, also argued that he was denied an opportunity to be a candidate for the Tennessee Supreme Court, but he did not pursue that claim on appeal. 356 F. App'x at 782. The district court determined Hooker did not have standing because "he suffered no injury under the law" given the Tennessee Supreme Court's approval of the constitutionality of the Tennessee Plan. *Johnson v. Bredesen*, No. 3:07-0372, 3:07-0373, 2008 WL 701584, at *5 (M.D. Tenn. Mar. 13, 2008). The Court recognizes that, in addressing the appeal, the Sixth Circuit noted that "[t]he district court was . . . required to put aside the issue of constitutionality of the Tennessee Plan, and instead consider whether the plaintiffs satisfied the standing requirement" in light of the Supreme Court's instruction "that the threshold inquiry into standing 'in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" 356 F. App'x at 784 (quoting *Warth*, 422 U.S. at 500). Nevertheless, the district court also determined Hooker lacked standing because he made "no contention of unequal treatment as a potential candidate pursuant to the equal protection clause" and the Sixth Circuit had "already determined that Plaintiff Hooker has no property right to run for a state office." 2008 WL 701584, at *5 (citing *Hooker v. Anderson*, 12 F. App'x at 324).

9

Sixth Circuit affirmed the district court's dismissal of these claims "for the reasons set forth" by the district court in a memorandum entered October 16, 2000. *Id.* at 325.

The district court's October 16 memorandum determined that, as to his First Amendment right to be a candidate, the Supreme Court has held that a state may regulate a candidate's interest in any state office and that state judges need not be elected. *Hooker v. Anderson*, No. 3:00-0510 (M.D. Tenn. Oct. 16, 2000) (citations omitted). As to his Fourteenth Amendment substantive due process right, the district court likewise determined the plaintiff did not have a right to run for state office. *Id.* Regarding his procedural due process rights, the district court stated that the plaintiff did not have a property right to participate as a candidate in the election for appellate judge and that, as a voter, state law afforded him a process to challenge a judicial election and he had been afforded due process. *Id.* Finally, as to his equal protection claim, the district court said there were no facts indicating that the plaintiff was being treated differently than any other voter in the elections. *Id. See also Hooker v. Sasser*, 893 F. Supp. 764, 767 (M.D. Tenn. 1995) (finding "plaintiffs' allegations of diluted voting power, denial of undivided loyalty, and denial of the right to have their Senators exclusively elected by Tennessee citizens do not identify any 'concrete and particularized' injury which they have suffered or will suffer because of the defendants' conduct" (quoting *Warth*, 422 U.S. at 501). *But see Johnson v. Bredesen*, No. 3:07-0372, 2007 WL 1387330, at *2 (M.D. Tenn. May 8, 2007) (finding standing a "close question" because the plaintiff alleged he would "be denied his right, grounded in the Tennessee Constitution, to vote in a popular election for

10

Tennessee Supreme Court Justice if an injunction is not issued" but assuming, "solely for purposes of" the plaintiff's motion for an injunction that the plaintiff "identified a 'concrete and particularized' injury").

The Court finds that plaintiff's case is no different from these previous attacks on Tennessee laws pertaining to the election of officials.  At bottom here, plaintiff's complaint is a generalized grievance that involves "abstract questions of wide public significance." *Warth*, 422 U.S. at 500.  Indeed, at the hearing, while plaintiff claimed he was injured because he wanted to run for office, he emphasized that he was pursuing this litigation on behalf of the people of Tennessee to make a point about the manner in which appellate court judges are selected and retained.  Indeed, his complaint—as well as each proposed amended complaint—is replete with references that "the people of Tennessee" have been denied their constitutional rights, and it seeks relief on their behalf [*See, e.g.*, Doc. 1 ¶¶ 9, 10, 27, 28, 31, 33; *see also* Doc. 10-1 ¶¶ 9, 10, 27, 28, 31, 33; Doc. 20-1 ¶¶ 1, 10, 11, 67, 96, 97, 128–147, 148, 151].[7]

While the Court recognizes plaintiff's injury in that he was denied the opportunity to be placed on the August 2014 ballot, it is difficult to find, on the basis of his allegations and arguments, that his claim is not a generalized grievance shared by a large class of citizens, all of whom are denied the opportunity to be placed on the August 2014

---

[7] Along the same lines, in plaintiff's latest motion for an injunction, he asks the Court to enjoin Governor Haslam from making an appointment to the office of Supreme Court Justice William Koch, Jr., and from making any further appointments to a new term of any office of a Tennessee appellate judge for terms beginning September 1, 2014 [Doc. 32].  This type of relief would benefit not only plaintiff, but also any Tennessean who desires to run for the office of an appellate judge.

11

ballot. Undoubtedly, any Tennessean who desires to run for the office of an appellate judge would encounter the exact same obstacles that plaintiff has asserted here. The Court thus finds that plaintiff has failed to demonstrate standing. *See Hein*, 551 U.S. at 598 (noting a plaintiff does not have standing "to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens" (internal quotation marks and citation omitted)); *Lance*, 549 U.S. at 442 (finding no standing where only injury asserted was that the law was not followed because the injury is "undifferentiated[ and] generalized"); *Allen*, 468 U.S. at 754 ("This Court has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 220–21 (1974) ("We reaffirm Le vitt in holding that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share.").

Plaintiff nonetheless argues that he has articulated at least nineteen reasons for standing in his latest proposed amended complaint [*See* Doc. 20-1 ¶ 2(1)–(19); Doc. 31]. The Court finds that none of these asserted reasons establish standing.[8]

Plaintiff primarily characterizes his complaint as one of ballot access and political association. He argues that the provisions of the Tennessee Plan violate his rights, as

---

[8] Because of the overlapping nature of plaintiff's asserted reasons for standing, the Court addresses some of the reasons for standing together. With respect to all of plaintiff's reasons, the Court finds that plaintiff has failed to meet his burden to demonstrate he has standing.

12

well as the rights of other Tennesseans, to access the ballot and to political association under the First and Fourteenth Amendment, relying primarily upon *Anderson v. Celebrezze*, 460 U.S. 780 (1983).[9] Plaintiff also asserts that he has a property right to vote in the August 2014 election. The Court, though, finds plaintiff has suffered no legal injury. *See Lujan*, 504 U.S. at 560 (explaining that "injury in fact" must consist of "an invasion of a legally-protected interest"). There is no fundamental right to public employment or to run for elective office. *Zielasko v. Ohio*, 873 F.2d 957, 961 (6th Cir. 1989) (citing *Snowden v. Hughes*, 321 U.S. 1, 6–7 (1944), and *Bullock v. Carter*, 405 U.S. 134, 142 (1972)); *see also Wilson v. Birnberg*, 667 F.3d 591, 597–98 (5th Cir. 2012) *cert. denied*, 133 S. Ct. 32 (2012); *Stiles v. Blunt*, 912 F.2d 260, 265 (8th Cir. 1990); *Burks v. Perk*, 470 F.2d 163, 165 (6th Cir. 1972) (citing *Taylor & Marshall v. Beckham*, 178 U.S. 548 (1900)). *Accord Hooker v. Anderson*, No. 3:00-0510, *aff'd by* 12 F. App'x at 324 (finding state law does not create a cognizable property right to be a candidate for a Tennessee appellate court judgeship). Moreover, there is no fundamental right under the federal constitution to vote in a state election. *Rodriguez v. Popular Democratic*

---

[9] In *Anderson*, the Supreme Court addressed the First Amendment validity of a law requiring that independent candidates file paperwork to be on the general election ballot earlier than other candidates. 460 U.S. at 782–83. The Court held that the early filing deadline placed an unconstitutional burden on voting and associational rights because it prevented independents from taking advantage of unanticipated political opportunities that might arise later in the election cycle and required independent candidates to gather petition signatures at a time when voters were not attuned to the upcoming campaign. *Id.* at 786, 790–92. *Anderson* established "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters . . . to cast their votes effectively." *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 127 (6th Cir. 1995) (citation omitted). Plaintiff is entitled to these rights, but for the reasons explained, he lacks standing because there is no injury. And the injury is, as already discussed, generalized.

Case 3:13-cv-00630-TAV-HBG Document 40 Filed 02/28/14 Page 13 of 18 PageID #: 853

*Party*, 457 U.S. 1, 9 (1982). Nor does plaintiff have a federally protected right to vote for a specific candidate or even a particular class of candidates. *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir. 1998); *Miyazawa v. City of Cincinnati*, 45 F.3d 126, 128 (6th Cir. 1995); *Zielasko*, 873 F.2d at 961.

In addition, plaintiff claims that the "right of a qualified voter to challenge a state election law is clearly established" and thus establishes standing [Doc. 31]. He cites *Baker v. Carr*, in support, but his reliance on *Baker* is misplaced.

*Baker* dealt with a challenge to Tennessee's 1901 Apportionment Act under the Equal Protection Clause of the Fourteenth Amendment. The plaintiffs brought the case on their own behalf and on behalf of all qualified voters in Tennessee. They asserted that the act—which was the last reapportionment act passed by the Tennessee General Assembly prior to the plaintiffs filing suit in 1961, despite the fact that Tennessee's population had grown from 2,020,616 to 3,567,089—constituted "arbitrary and capricious state action, offensive to the Fourteenth Amendment in its irrational disregard of the standard of apportionment prescribed by the States' Constitution or of any standard, effecting a gross disproportion of representation to voting population." *Id.* at 207.

The Supreme Court found that "[t]he injury . . . [they] assert[ed] [was] that this classification disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality vis-à-vis voters in irrationally favored counties." *Id.* at 207–08. The Court thus concluded that these plaintiffs had standing

14

because they were asserting "'a plain, direct and adequate interest in maintaining the effectiveness of their votes,' not merely a claim of the right possessed by every citizen to require that the government be administered according to the law . . . ." *Id.* at 208 (citations omitted).  As already explained, plaintiff falls within the latter category.

Plaintiff has also not alleged that he is being treated differently from any other voter in Tennessee.  *See Mixon v. Ohio*, 193 F.3d 389, 402 (6th Cir. 1999) (recognizing right to "participate in state elections on equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population" (citation omitted)).  Instead, he asserts that he, like every other qualified voter, is being denied the right to associate with like-minded voters and to vote in the August 2014 election for certain appellate court judges.  These allegations do not amount to a concrete and particularized injury.  *See Miller*, 144 F.3d at 921; *Looper v. Boman*, 958 F. Supp. 341, 344–45 (M.D. Tenn. 1997); *Hooker v. Sasser*, 893 F. Supp. at 768.  Even if plaintiff's voting rights were somehow disenfranchised, *Baker* "does not make every alleged dilution of voting rights a sufficient injury to confer standing." *Looper*, 958 F. Supp. at 344 (citing *Daughtrey v. Carter*, 584 F.2d 1050, 1056 (D.C. Cir. 1978)).  And the Court finds that the "class of one" theory is inapplicable here.  *See Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 836 (6th Cir. 2009) (discussing that the "class of one theory" involves "intentionally treat[ing] one individual differently from other similarly situated without any rational basis").

15

Plaintiff further asserts that the "First Amendment Grievance Clause" provides standing. He relies upon *Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011), but his reliance is misplaced because *Guarnieri* concerned "the extent of the protection, if any, that the Petition Clause grants public employees in routine disputes with government employers." 131 S. Ct. at 2491. Plaintiff is not a public employee, and the Court declines to extend *Duryea* to apply to plaintiff just because he took an oath to support the Constitution of the United States and the Tennessee Constitution when he became a member of the bar of the Tennessee Supreme Court.

Finally, plaintiff argues that under Article I, Section 17 of the Tennessee Constitution, he has a constitutional right to sue where a public officer acts in violation of a constitutional right and that under Tenn. Code Ann. § 29-35-110, he has the right as a private citizen to sue, in the name of the state of Tennessee, officers who violate or fail to faithfully perform their duties pursuant to the United States Constitution. Private citizens, though, cannot bring an action alleging misconduct without evincing a special interest that is not common to the public at large. *Badgett v. Rogers*, 436 S.W.2d 292, 294 (Tenn. 1968); *see also Watson v. Waters*, No. E2009-01753-COA-R3-CV, 2010 WL 3294109, at *5–6 (Tenn. Ct. App. Aug. 20, 2010); *State ex rel. DeSelm v. Owings*, 310 S.W.3d 353, 359 (Tenn. Ct. App. 2009). As the Court has already determined, plaintiff's injury is one common to the general public, or at least a large portion thereof.

Plaintiff further argues that in the context of this case, § 1988(a) authorizes the adoption of these state-law claims into federal law in order to render the Civil Rights Act

16

fully effective, thereby creating a cause of action for which plaintiff has the necessary standing. Yet, in *Moor v. Alameda County*, 411 U.S. 693 (1973), the Supreme Court rejected this argument. There, the plaintiffs argued that it was appropriate for the district court to adopt into federal law, under § 1988, the California law of vicarious liability for municipalities, which would then give the federal court jurisdiction to hear their claims against the county. The Supreme Court rejected this argument, stating it was unable "to conclude that Congress intended [§ 1988] standing alone, to authorize the federal courts to borrow entire causes of action from state law." *Id.* at 700–02. *See also Hall v. Wooten*, 506 F.2d 564, 568 (6th Cir. 1974) (stating that "§ 1988 does not create federal causes of action for violation of civil rights").

Accordingly, the Court finds that plaintiff lacks standing to assert the claims set forth not only in his complaint, but in his proposed amended complaints. While plaintiff has asked defendants to identify who would have standing to challenge the Tennessee Plan, if not plaintiff, it is not for defendants nor the Court to identify who would have standing. It is the Court's role to determine if the plaintiff before it has standing. For the reasons set forth in this memorandum opinion, the Court finds the plaintiff before it lacks that key to federal jurisdiction. The Court will therefore dismiss plaintiff's action. *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012) ("The issue of standing . . . may be raised *sua sponte*." (citation omitted)).

## III. Conclusion

For the reasons set forth herein, the Court will **DENY** plaintiff's Motion for Temporary Injunction [Doc. 6], plaintiff's motion to amend the complaint filed on December 27, 2013 [Doc. 10], Plaintiff's Motion to Strike and Withdraw the December 27, 2013 Motion to Amend the Complaint and File in its Place this Motion to Amend with Amended Complaint Attached [Doc. 20], plaintiff's Motion for Scheduling Conference [Doc. 24], plaintiff's Motion for Leave to File the Attached Amended Application for Temporary Injunction in Excess of Twenty-Five Pages [Doc. 25], plaintiff's Motion for Temporary, Limited EDTN CM-ECF Access [Doc. 30], plaintiff's Application for Temporary Injunction Prohibiting Governor Haslam From Making Appointments to New Terms of Office for Tennessee Appellate Judges [Doc. 32], and plaintiff's Motion for Summary Judgment [Doc. 33] for lack of standing and **DISMISS** this action. Consequently, the Court will **DIRECT** the Clerk to close this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE